___ FILED   ___ ENTERED
____ LOGGED _____ RECEIVED

JDM 6.22.23

11:47 am, Jul 19 2023

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____Deputy

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

Paul E. Budlow
*Assistant United States Attorney*
*Paul.Budlow@usdoj.gov*

*Suite 400*
*36 S. Charles Street*
*Baltimore, MD 21201-3119*

*DIRECT: 410-209-4917*
*MAIN: 410-209-4800*
*FAX: 410-962-3091*

June 22, 2023

Paul D. Hazlehurst, Esquire
Law Office of Paul D. Hazlehurst
11350 McCormick Road
Executive Plaza II, Suite 750
Hunt Valley, MD 21031

Re:     *United States v. Franklin Jay Smith,*
         Case No. GLR-22-0140

Dear Mr. Hazlehurst:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Franklin Jay Smith (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by July 14, 2023, it will be deemed withdrawn. The terms of the Agreement are as follows:

Offense of Conviction

1.      The Defendant agrees to plead guilty to Count Eight of the Indictment, which charges the Defendant with Carjacking, in violation of 18 U.S.C. § 2119, and Count Nine of the Indictment, which charges the Defendant with Use, Carry, and Possess a Firearm During and in Relations to a Crime of Violence, in violation of 18 U.S.C. § 924(c). The Defendant admits that the Defendant is, in fact, guilty of the offenses and will so advise the Court.

Elements of the Offense

2.      The elements of Count One to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

Count Eight:

That from on or about May 15, 2021, through on or about May 16, 2021, in the District of Maryland:

Rev. August 2018

a.      The Defendant took a motor vehicle from the person or presence of another;

b.      The Defendant took the vehicle by using force and violence or by acting in an intimidating manner;

c.      The Defendant acted with intent to cause death or serious bodily harm; and

d.      The motor vehicle had previously been transported, shipped, or received in interstate or foreign commerce.

3.      The elements of Count One to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

Count Nine:

That from on or about May 15, 2021, through on or about May 16, 2021, in the District of Maryland:

a.      The Defendant committed a crime of violence, specifically Carjacking, as charged in Count Eight of the Indictment, for which he might be prosecuted in a court of the United States; and

b.      The Defendant knowingly used, carried, and discharged a firearm during and in relation to the crime charged in Count Eight of the Indictment.

## Penalties

4.      The maximum penalties provided by statute for the offense(s) to which the Defendant is pleading guilty are as follows:

| COUNT | STATUTE | MANDATORY MINIMUM IMPRISONMENT | MAXIMUM IMPRISONMENT | MAXIMUM SUPERVISED RELEASE | MAXIMUM FINE | SPECIAL ASSESSMENT |
|-------|---------|-------------------------------|---------------------|---------------------------|--------------|---------------------|
| 8 | 18 U.S.C. § 2119(1) | n/a | 15 years | 3 years | $250,000 | $100 |
| 9 | 18 U.S.C. § 924(c) | 5 years | Life | 5 years | $250,000 | $100 |

a.      Prison:  If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b.      Supervised Release:  If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant

returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

c. Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, 3664 and § 2259(b)(2)(b).

d. Special Assessments: The Court must order the Defendant to pay a special assessment pursuant to 18 U.S.C. § 3013 and may order additional special assessments for certain convictions pursuant to 18 U.S.C. §§ 3014 and 2259A.

e. Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

f. Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

g. Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

## Waiver of Rights

5. The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

a. If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and

3

would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

        c.      If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

        d.      The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

        e.      If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

        f.      By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

        g.      If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

        h.      By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not

4

relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

6.     The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

7.     This Office and the Defendant agree to the following Sentencing Guidelines:

a.     A stipulation of facts is attached as Attachment A to this plea agreement that specifically establishes the commission of additional offenses than those to which the defendant has agreed to plead guilty. Pursuant to § 1B1.2(c), those additional offenses shall be treated as if the defendant had been convicted of additional counts charging those offenses.

### Group One: May 5, 2021 (Agreed Conduct, Counts Three and Four):

Kidnapping (Count Three):

b.     Pursuant to U.S.S.G. § 2A4.1, the base offense level for Kidnapping is thirty-two (32).

c.     Pursuant to U.S.S.G. § 2A4.1(b)(2)(C), there is a three (3) level increase because the victim sustained between serious bodily injury and permanent or life-threatening bodily injury. [Subtotal: 35].

d.     Pursuant to U.S.S.G. § 2A4.1(b)(5), there is a six (6) level increase because the victim was sexually exploited. [Subtotal: 41].

Carjacking (Count Four):

e.     The base offense level for carjacking is 20, pursuant to U.S.S.G. § 2B3.1(a).

f.     Pursuant to U.S.S.G. § 2B3.1(b)(3)(E), there is a five (5) level increase because the victim sustained between serious bodily injury and permanent or life-threatening injury. [Subtotal: 25].

g.      Pursuant to U.S.S.G. § 2B3.1(b)(4)(A), there is a four (4) level increase because the victim was abducted to facilitate the commission of the offense. [Subtotal: 29].

h.      Pursuant to U.S.S.G. § 2B3.1(b)(5), there is a two (2) level increase because the offense involved carjacking. [Subtotal: 31].

Group Two: May 15-16, 2021 (Counts Seven and Eight):

Kidnapping (Agreed Conduct Count 7, Groups with Count Eight):

i.      Pursuant to U.S.S.G. § 2A4.1, the base offense level for Kidnapping is thirty-two (32).

j.      Pursuant to U.S.S.G. § 2A4.1(b)(2)(B), there is a two (2) level increase because the victim sustained serious bodily injury. [Subtotal: 34].

Carjacking (Count Eight):

k.      The base offense level for carjacking is 20, pursuant to U.S.S.G. § 2B3.1(a).

l.      Pursuant to U.S.S.G. § 2B3.1(b)(3)(E), there is a five (5) level increase because the victim sustained between serious bodily injury and permanent or life-threatening injury. [Subtotal: 25].

m.      Pursuant to U.S.S.G. § 2B3.1(b)(4)(A), there is a four (4) level increase because the victim was abducted to facilitate the commission of the offense. [Subtotal: 29].

n.      Pursuant to U.S.S.G. § 2B3.1(b)(5), there is a two (2) level increase because the offense involved carjacking. [Subtotal: 31].

Grouping:

o.      Group 1: Carjacking (Count Four) and Kidnapping (Count Three) involved the same victim and the same act or transaction and therefore group. The offense level for this group is 41.

p.      Group 2: Carjacking (Count Eight) and Kidnapping (Count Seven) involved the same victim and the same act or transaction and therefore group. The offense level for this group is 34.

q.      Because the offense level for the group with the highest offense level is 41 (Group 1), and because the offense level for Group 2 is five to eight levels less serious, there are 1 ½ units and the offense level is increased by one (1) level pursuant to U.S.S.G. § 3D1.4. [Subtotal: 42].

Rev. August 2018

Count Nine – Use, Carrying, or Possessing a Firearm in Relation to a Crime of Violence:

        r.      Under U.S.S.G. § 2K2.4(b) and 18 U.S.C. § 924(c)(1)(A)(i), the guideline sentence is five (5) years, which is consecutive to the sentences imposed under Count Eight.

        8.      This Office does not oppose a 2-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional 1-level decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

        9.      Thus, the adjusted offense level is 39.

        10.      There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

        11.      Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

## Obligations of the Parties

        12.      At the time of sentencing, this Office and the Defendant reserve the right to advocate for a reasonable sentence, period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a).

        13.      At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

        14.      The parties reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Indictment.

Rev. August 2018

## Waiver of Appeal

15.     In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

a.     The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

b.     The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

c.     The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Forfeiture

16.     a.     The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

b.     Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities.

c.     The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

Rev. August 2018

      d.     The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

      e.     The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

## Restitution

17.     Defendant agrees to the entry of a restitution order for the full amount of the victims' losses. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The total amount of restitution shall be due immediately and shall be ordered to be paid forthwith. Any payment schedule imposed by the Court establishes only a minimum obligation. Defendant will make a good faith effort to pay any restitution. Regardless of Defendant's compliance, any payment schedule does not limit the United States' ability to collect additional amounts from Defendant through all available collection remedies at any time. The Defendant further agrees that the Defendant will fully disclose to this Office, the probation officer, and to the Court, subject to the penalty of perjury, all information (including but not limited to copies of all relevant bank and financial records) regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this Agreement, and this Office may seek to be relieved of its obligations under this Agreement.

## Defendant's Conduct Prior to Sentencing and Breach

18.     Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

19.     If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

## Court Not a Party

20.     The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power under Rule 11(c)(5) to reject the plea agreement entered into under Rule 11(c)(1)(C). Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to whether the Court will accept the plea agreement entered into under Rule 11(c)(1)(C). The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

21.     This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Erek L. Barron
United States Attorney

10

Paul E. Budlow
Katelyn Semales
Assistant United States Attorneys

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

6/23/2023
Date

Franklin Jay Smith

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

6/23/23
Date

Paul D. Hazlehurst

**Attachment A**

*The undersigned parties hereby stipulate and agree that the following facts are true and accurate, and that if this matter had gone to trial, the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter gone to trial.*

Franklin Jay Smith ("Smith"), age 33, is a resident of Baltimore City, Maryland. In May, 2021, Mr. Smith along with Conspirator 1, Conspirator 2, Conspirator 3 and others (collectively, "the conspirators") planned to impersonate police to stop vehicles, carjack and abduct victims and use force and threats of force to steal cash.

**May 5, 2021:**

Check Cash Depot, located at 4127 Patterson Avenue, Baltimore, Maryland, was a financial services provider that provides check cashing, money transfers, bill payments, and money orders, and as such is a business which affects interstate commerce. Victim A.T. was an employee of Check Cash Depot.

On May 5, 2021, as victim A.T. was leaving her job at Check Cash Depot at approximately 8:00 p.m., members of the conspiracy, attempted to pull over A.T.'s vehicle, while driving a white Ford Fusion with a siren and lights on the roof. The Ford Fusion was provided by Smith. The Ford Fusion pulled in front of A.T.'s vehicle and a second vehicle, also driven by members of the conspiracy, pulled alongside. Conspirators dressed in police-style tactical vests with "police" written on them, police style badges hanging from their necks, wearing masks, produced firearms and removed A.T. from her vehicle, handcuffed her, covered her face, put duct tape over her mouth, and put her in the back seat of the Ford Fusion. The Ford Fusion drove off with A.T. in the rear, and one of the conspirators followed, driving A.T.'s vehicle.

While A.T. was in the back seat of the Ford Fusion, the conspirators took her keys, which included the keys to Check Cash Depot. The conspirators also demanded the combinations to the safes at Check Cash Depot. When A.T. was unable to provide the combinations, A.T.'s shirt and pants were removed, and her breasts and her inner thighs were fondled. A blow torch was used to burn A.T. – she received serious burn injuries to her chest, stomach, and leg, while the conspirators continued to demand information from A.T.

After several hours, A.T. – still handcuffed and blind-folded – was placed on the floorboard of her vehicle, and her vehicle was driven to Braeside Road in Baltimore City. The vehicle was then covered with a tarp that was secured by bungee cords, and the conspirators left the area with A.T. still on the rear floorboard, handcuffed and blindfolded. At approximately 4:20 a.m., A.T. was able to force her way out of her vehicle, and she ran to a nearby residence for help.

A.T.'s vehicle that was carjacked by the conspirators on May 5, 2021 was manufactured outside the state of Maryland and therefore affected interstate commerce.

The burning of A.T. during the abduction caused extreme pain and significant injury, causing obvious and permanent disfigurement. A.T. has undergone multiple surgeries and hospitalizations.

### May 15-16, 2021:

Around midnight on May 15-16, 2021, J.H. left a friend's residence in Edgewood, Maryland at approximately midnight. Driving the Ford Fusion, with police-style lights, members of the conspiracy approached J.H.'s car, identified themselves as police, while wearing police-style vests with "police" written on them, masks, and gloves. The men were armed with firearms. The conspirators told J.H. that he had an outstanding warrant, and that he was under arrest. The conspirators then put J.H. in handcuffs, put duct tape over his eyes and mouth, bound his feet, and put him in the back of the Ford Fusion. J.H. was then driven away in the Ford Fusion while members of the conspiracy followed the Ford Fusion in J.H.'s vehicle.

At the time J.H. was abducted, Smith was in the White Marsh area of Baltimore County, within minutes of an onramp to Interstate 95, awaiting a call from a conspirator notifying him that J.H. had been abducted. As the Ford Fusion traveled south on Interstate 95, Conspirator 1 called Smith, who then drove in a separate vehicle and met up with the Ford Fusion, J.H. and other conspirators in the 4000 block of Colchester Road, in Baltimore City.

While in the Ford Fusion, the conspirators questioned J.H. about money, and used a blow torch to burn his chest when he did not answer questions. The conspirators took J.H.'s necklace, wallet, phone, and car keys. The conspirators released J.H. in Baltimore City at approximately 5:20 a.m.

J.H.'s vehicle that was carjacked by the conspirators on May 15-16, 2021 was manufactured outside the state of Maryland and therefore affected interstate commerce.

J.H. was in extreme pain when burned with the blow torch and has permanent scarring.

Smith was aware that A.T. was burned with a blowtorch on May 5, 2021, and also aware that firearms were used on May 5, 2021. Smith was aware that force and threats of force would be used during the offenses, was aware that the conspirators regularly carried firearms, and agrees that he was aware that firearms would be used during the offenses on May 15-16, 2021.

All of the events described above occurred in the District of Maryland.

I have reviewed the foregoing Statement of Facts with my attorney, understand it, agree with it, and do not wish to change any part of it.  I further understand that it is included as a part of my plea agreement with the government in this case.

Franklin Jay Smith

I am the attorney for the defendant.  I have carefully reviewed every part of this Statement of Facts with him.  To my knowledge, his decision to sign it is an informed and voluntary one.

Paul D. Hazlehurst
Counsel for Defendant

Rev. August 2018