IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Crim. No.: BAH-22-0140 |
| DONTE STANLEY | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANT'S REPLY TO THE GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS THE SEARCH AT 1710 DUNDALK AVENUE**

NOW COMES Defendant Donte Stanley, by and through undersigned counsel, and respectfully replies to the Government's Consolidated Opposition to Defendants' Pretrial Motions (ECF 137).

I. **Defendant's Motion to Suppress Evidence Seized from 1710 Dundalk Avenue Should be Granted Because the Search Violated the Fourth Amendment's Protections Against Warrantless Searches**

A. The Insertion of a Key into a Lock is a Search following *Jones* and *Jardines*

The Fourth Circuit's conclusion that the "act of inserting the key into the lock and discovering whether or not it fit did not offend the Fourth Amendment," flies in the face of later the Supreme Court's seminal decisions in *Jones* and *Jardines*. *United States v. Moses*, 540 F.3d 263, 272 (4th Cir. 2008). *Moses* can no longer stand due to more recent Supreme Court rulings. In *Moses* , prior to inserting the defendant's key into the lock, the police had the following information connecting the defendant to the house in question: (1) a CrimeStoppers tip that someone was selling drugs at the specific address; (2) information from an informant that the defendant sold drugs on that street, and (3) the defendant's vehicle had been observed parked outside of the location. In light of these facts, the Fourth Circuit found that the insertion of the key served a "discrete investigative purpose of confirming [defendant] had access to the …

1

residence." *Id.* at 272. In support of this decision, the Fourth Circuit cited to *United States v. Salgado*, 350 F.3d 438, 456 (6th Cir. 2001); *United States v. Concepcion*, 942 F.2d 1170, 1172-73 (7th Cir. 1991); *United States v. Lyons*, 898 F.2d 210, 212-13 (1st Cir. 1990). The Fourth Circuit gave no explanation as to why the act of inserting a key into a lock did not offend the Fourth Amendment other than the citations to the prior out of circuit cases.

*Moses*, *Salgado, Concepcion,* and *Lyons* were all decided before the Supreme Court's decision in *United States v. Jones*, 565 U.S. 400, 406–07 (2012), where the Court supplemented the *Katz v. United States*, 389 U.S. 347, 360 (1967) "reasonable expectation of privacy" Fourth Amendment rule by finding that the Fourth Amendment also shielded citizens from a trespass into their houses, papers, and effects. Further, the *Moses* decision predates the Supreme Court's finding in *Florida v. Jardines*, 596 U.S. 1, 133 S. Ct. 1409, 1414–15 (2013), that there is an expectation of privacy in the "curtilage of the home." Finally, five years after the *Jardines* decision, the Supreme Court that held a warrantless physical intrusion into the home or its curtilage is presumptively unreasonable. *Collins v. Virginia*, 138 S. Ct. 1663, 1670 (2018). The rulings in *Jones, Jardines,* and *Collins* changed Fourth Amendment analysis and require the conclusion that the insertion of a key into the door of a home constitutes a warrantless search.

The First Circuit and at least one other district court have found that, following the Supreme Court's decisions in *Jones* and *Jardines*, that testing a key on a lock without a warrant constitutes an illegal search. This Court should rule likewise. In *United States v. Bain,* 874 F.3d 1, 10 (1st Cir. 2017), agents observed the defendant exiting an apartment building which contained four units, detained him outside of the apartment building, and seized his keys pursuant to the arrest. The agents tried the keys on three of the apartment doors before determining that the keys fit the door to unit D. *Id.* at 10. After determining that the key fit, officers entered the apartment to conduct a

2

"'a protective sweep to make sure no one else was inside.'" *Id.* During the protective sweep, agents observed a parking ticket issued to the defendant's vehicle and a safe in the same bedroom. *Id.* The officers later obtained a warrant for the apartment. *Id.* The First Circuit found that the inside of the lock is within the home itself and therefore inserting the key constituted a search under the Fourth Amendment. *Id.* at 14–15 (noting that a lock is "used precisely to bar unwelcome entry and invasion of privacy," and that the "very design of a lock hides its interior from examination."). The Court further found that the search was unreasonable, as there were no exigent circumstances and the officers had failed to make any effort to consider or pursue other possible means or determining the unit in which the Defendant resided. *Id.* at 16–20. The Court further found that there was no good faith on the part of the officers under *Davis v. United States*, 564 U.S. 229 (2011), because following *Jones* and *Jardines*, there could be no "clear and well-settled" belief that inserting a key in a lock was not a search. *Bain*, 874 F.3d at 20.

In *United States v. House*, 2019 U.S. Dist. LEXIS 215962 at *2 (Mont. Dec. 16, 2019), federal agents located a key in a backpack they believed to belong to the defendant, and inserted that key into the garage door of the defendant's home. After finding that the key fit snugly, the officer turned the door handle and opened the door a few inches to confirm the key had unlocked the door. *Id.* at *3. The district court found that "there is little disagreement the act of inserting a key into a home's lock exceeds the public's implied license to approach someone's front door and knock," and that the agent's insertion of the key into the lock was a search of the defendant's home that was presumptively unreasonable absent a warrant exception. *Id.* at *6 (citing *Collins*, 138 S. Ct. at 1670). The district court in Montana was unconvinced by government's assertion that the search was reasonable under a "minimally intrusive" exception to the warrant exception, largely

3

because all of the cases cited by the government in support were pre-*Jones* and *Jardines*. *Id.* at *7. As a result, the motion to suppress was granted. *Id.* at 10.

Mr. Stanley's case is nearly identical to the case in *Bain.* He was also observed coming out of an apartment building. No effort was made to pursue other avenues of determining what apartment in the building he lived in. Further, unlike in *Moses,* the insertion of the key into the lock was not an investigative step to confirm what officers already knew – they had no knowledge whatsoever about which apartment Mr. Stanley had emerged from. As will be discussed below, there were no exigent circumstances warranting the warrantless search. Following, *Jones* and *Jardines*, the officers could not have relied on any "well-settled" law that allowed them to enter a key into the lock of a home without a warrant. As such, the entry of the key into the lock constituted a warrantless search, and the fruits of that search much be suppressed.

B. No Exigent Circumstances Justified the Testing of the Key in the Lock of Apartment 4C or the Subsequent Protective Sweep

The Government's contention that "exigent circumstances" existed to allow entry into the apartment is baseless. Unlike the cases cited to by the Government, there was no reasonable belief that anyone was in the apartment, let alone that someone in the apartment was tipped off regarding Mr. Stanley's arrest. *United States v. Turner*, 650 F.2d 526, 528 (1981) (defendant informed police after his arrest that another individual was in his apartment, where police believed contraband was located); *Moses*, 540 F.3d at 267, 270 (defendant, in earshot of the officers, informed his cousin, who lived in an adjacent unit, of his arrest, and the cousin, during a consent search made loud noises so as to alert an individual in the adjacent unit). Instead, the Government argues that officer's believed an "associate" was conducting "counter-surveillance" *at the time of the protective sweep* as a reason that someone may destroy evidence in the apartment. ECF 137 at 48. Even by the Government's own account, this alleged "counter-surveillance" did not occur until

4

officers were already conducting a protective sweep. Records indicate that officers in this case briefly detained J.G. who is the step-brother of Mr. Donte Stanley, and had just picked him up at the time of his arrest. *See* Exhibit 3 to Defendant's Motion to Suppress the Search of Dundalk Avenue. Further, it appears that J.G. was released before any efforts were made to even enter the apartment building, let alone locate the apartment. There have been no allegations that J.G. is associated with this case. There is no allegation that J.G. pulled back into the parking lot, or got out of his vehicle, all of which would be necessary to approach the apartment. While the Government contends that there was no way for the officers to observe all of the entrances to the apartment building, that is simply not true. At the time of Mr. Stanley's arrest, he was approached by at least two police vehicles containing Harford County Sheriffs. In the incident report submitted by Baltimore Police Officer Guerrero, he reported that he was at the scene and that he was joined by SA Morrison of the FBI, SA Vogel of the FBI, and TFO Anderson. *See* Exhibit 1 to Reply. There were a minimum of six officers on the scene, and three entrances to the apartment. Further, it appears that there was an ability to enter the apartment building itself to secure the scene without entering into the apartment itself. It does not appear officers did so. There were no exigent circumstances warranting the entrance into Apartment 4C.

    C. <u>The Illegally Obtained Information from the Illegal Key Search and the Illegal Protective Sweep Remove Probable Cause from the Warrant</u>

The search of the apartment cannot be saved by the warrant which came after the two illegal searches. Without the illegal search involving the insertion of the key into the lock of the apartment, there is no search warrant, as there is no identification of the apartment. Second, absent the hard drive on the floor that was believed to store photos, consistent with the allegation that Mr. Stanley and his accomplices "used sophisticated forms of technology", there was no probable cause. See Exhibit 2 to Defense Motion at 5. While there is an allegation that the

5

underlying crimes involved the use of a firearm, and that there was no firearm located in the search of his apartment months earlier, there is nothing to tie a firearm that the police believed was missing to the apartment on Dundalk Avenue. There was nothing that indicated Mr. Stanley stayed in that apartment for more than one night. Finally, the officers could not in good faith rely on the facially invalid warrant under *Leon*.

## **CONCLUSION**

For the foregoing reasons, as well any additional facts, points, and authorities that may be raised at the hearing on this Motion, the Defendant requests that this Honorable Court grant his motion to suppress evidence located at 1710 Dundalk Avenue.

Respectfully submitted,

/s/
Gary E. Proctor (Bar No. 27936)

/s/
Jennifer E. Smith (Bar No. 20767)
The Law Offices of Gary E. Proctor, LLC
8 E. Mulberry Street
Baltimore, Maryland 21202
(410) 444-1500 (tel.)
(443) 836-9162 (fac.)
garyeproctor@gmail.com
jennsmith0890@gmail.com
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on March 15, 2024, a copy of this motion was electronically filed with the Clerk of the Court and was served on all parties using CM/ECF system.

/s/
JENNIFER E. SMITH
