**IN THE UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES** | : | |
| | : | |
| | : | |
| **v.** | : | **Case No. BAH-22-0140** |
| | : | |
| **DENNIS HAIRSTON,** | : | |
| | : | |
| **Defendants** | : | |

**Motion for Additional Voir Dire of the Jury and Evidentiary Hearing**

**Introduction**

It has come to light that a juror engaged in a conversation with the courtroom deputy expressing fear for the jurors' safety—specifically implying that she is scared the defendants will harm them—in the presence of other jurors. Fourth Circuit law dictates that this external communication with the courtroom deputy expressing such fear (in the presence of other jurors) requires this Court to take two independent courses of action: *First*, this Court must conduct a voir dire of the jurors to determine whether the affected jurors remain fair and partial. *Second*, this Court must conduct an evidentiary hearing under *Remmer v. United States*, 347 U.S. 277, 229 (1954) to assess the jurors' continuing ability to consider the evidence impartially. In support thereof, Mr. Hairston states as follows:

**Relevant Facts**

Mr. Hairston's trial began on Monday May 13, 2024. On the second day of trial after the testimony of victim A.T., parties were made aware that an unidentified juror relayed concerns for her safety to the courtroom deputy. According to the information conveyed to parties by the Court, the juror made several comments to the courtroom deputy (in the presence of other jurors) that included the following:

- Asking "Do jurors ever cry? I thought I was about to cry during the testimony;"

- Asking something to the effect of "Am I safe?" or "Are we safe?;"

- Discussing a video seen on the internet that depicted a defendant in Las Vegas leaping and assaulting a judge; and

- Mentioning concerns about security and the fact that the Defendants did not appear handcuffed or shackled.

In response to the jurors' concerns, the courtroom deputy responded "it's okay" and that she had not seen anyone cry." The courtroom deputy also told the juror that the example she provided happened in "state court not federal court" and that the jurors should not worry because "we have much better security here."

## Argument

As further discussed below, in light of the above-stated facts, there are two independent courses of action that this Court must take to assure that Mr. Hairston's right to trial "by an impartial jury" has not been violated under the Sixth Amendment.

### A.   This Court must voir dire the jurors to determine whether they remain fair and impartial.

First, this Court must voir dire the jurors to determine whether they remain impartial. Indeed, the Sixth Amendment "requires a trial judge to remain ever watchful to prevent prejudicial occurrences and he therefore must conduct *voir dire* in a manner that adequately identifies unqualified or potentially biased jurors." *United States v. Smith*, 919 F.3d 825, 834 (4th Cir. 2019). Under these terms, "[w]hen a serious, nonspeculative question of impartiality arises during trial, the district court must determine whether the affected jurors remain fair and impartial." *Id.* (citing *United States v. Thompson*, 744 F.2d 1065, 1068 (4th Cir. 1984)).

Specifically, in *Smith*, the Fourth Circuit held that a nonspeculative question of impartiality arose when a juror (known as Juror No. 5) expressed to the court a fear of violent retaliation by the defendants. *Id.* at 834. To address this concern, the district court proceeded in a way that the Fourth Circuit endorsed as a roadmap that district courts should take to assess juror bias. *Id.* To begin, the district court, in a sealed proceeding, questioned the juror who expressed fear of the defendants. Upon this questioning, the juror "voiced doubt that she could remain fair and impartial." *Id.* at 831. Therefore, the court excused her. *Id.* The Court further asked the juror whether she had discussed her fears with other jurors, and she replied that she had spoken to some other judges about her fear. *Id.* "Based on the possibility that her discussions might have contaminated the entire jury," the district judge "devised two questions to ask each other juror to probe for impartiality, bias, or contamination:"

> Question 1: when we last spoke during jury selection process, you told me that you believed that you could be a fair and impartial juror. Has anything occurred since we last spoke that would cause you to change your answer to that questions?
>
> Questions 2: Since you began to serve on the jury, has anything been said or overheard by you in the jury room that would affect your ability to be a fair and impartial juror?

*Id.*

Upon conducting this questioning, two jurors expressed doubt about their ability to remain partial. Thus, the district court excused them. The Fourth Circuit praised the district court's procedures to assure an impartial jury and "encouraged" district court "to take this direct approach to detect bias in jurors." *Id.* The Fourth Circuit explained that the district court "balanc[ed] the need to detect bias against the concern that inartful questioning could itself generate bias." *Id.* He did so "by ask[ing] about bias directly, without explicitly discussing Juror No. 5 or any fears of violent retaliation. In evaluating their responses, he considered the jurors' reactions and, where

necessary, followed up." *Id.*  In so doing, "this trial judge made reasoned judgments in walking the line between detecting bias and creating bias." *Id.*

This Court should follow the same course here.  Just like that in *Smith,* a juror has expressed fear of the defendants (specifically by referencing the Las Vegas video and alluding to security concerns because the defendants are not handcuffed or shackled), which raises a non-speculative concern of impartiality.  Indeed, as the Court made evident in *Smith*, a juror's concern for his or her personal safety is troubling, because it indicates not only that facts outside the evidence in the case will influence (and have already influenced) the juror's decision-making, but also that the juror has abandoned the presumption of innocence, concluding not only that bad things happened, but that the defendant is responsible for them.  And because the juror here made the comments in the presence of other jurors, there is an additional danger that these other jurors were also infected with the same bias.   And even more, it may be that the juror spoke directly about her fear of the defendants to other jurors at another time.

Therefore, just like that in *Smith*, this Court should follow the careful approach the district court took in *Smith* to detect bias by (1) conducting (in a sealed proceeding) a voir dire of the individual juror who communicated with the courtroom deputy about her fear, and whether she can remain impartial (2) and individually questioning the rest of the jurors with the same two questions the district court used in *Smith* (with follow-up if needed).

In the absence of these procedures, Mr. Hairston will be deprived of his Sixth Amendment right to an impartial jury.[1]  The need to detect juror bias is especially critical here because if

---

[1]      The Seventh Circuit's decision in *United States. v. Blitch*, 622 F.3d 658 (2010) is also instructive.  In that case, the Seventh Circuit found that defendants were denied their right to impartial jury by the trial court's 's refusal to empanel new venire or conduct individualized voir dire after it became known that prospective jurors were discussing their safety fears, where nature of discussions among jurors was widespread.  The Court noted that even if one juror's peace of

convicted of all counts after trial, he is facing a potential life sentence. Given the possible penalties

in this case,  the Court's duty to ensure a fair and impartial jury is heightened.

> **B.      Mr. Hairston is entitled to a *Remmer* hearing.**

Independent of this Court's duty to detect juror by conducting the questioning discussed

above, Mr. Hairston is entitled to an evidentiary hearing under *Remmer v. United States*, 347 U.S.

277, 229 (1954) to explore bias created by the juror's communication about her fears with the

courtroom deputy.

In *Remmer*, the Supreme Court established the procedures that a district court **_must_** follow

when there has been a direct or indirect "private communication, contact, or tampering ... with a

juror during a trial about the matter pending before the jury." 347 U.S. 277, 229 (1954). A

defendant seeking a *Remmer* hearing must present a "credible allegation" that "an unauthorized

contact was made," and that the contact "was of such a character as to reasonably draw into

question the integrity" of the trial proceedings, constituting "more than an innocuous

intervention." *Barnes v. Joyner*, 751 F.3d 299, 242-45 (4th Cir. 2014) (citations and internal

---

mind is affected, that can be enough to deprive a defendant of a fair trial. *Id.* (citing *United States v. Simtob*, 485 F.3d 1058, 1064 (9th Cir.2007) (vacating conviction and remanding for further proceedings in light of court's failure to investigate potential juror prejudice after a juror informed the court that he felt threatened by the defendant's "eyeballing" him)). This case applies with even more force here because the relevant juror communication expressing fear of the defendants was made in the presence of other jurors—possibly poisoning multiple jurors. *See also United States v. Taylor*, 554 F.2d 200, 202 (5th Cir.1977) (holding that the trial judge abused his discretion in failing to excuse the juror when a juror expressed doubt about whether she could be open-minded two days after the trial had begun: "The trial judge was properly concerned about the possibility of a mistrial and the resulting expense and loss of judicial time a retrial would have caused. However, this concern must be weighed against appellants' right to a trial by an impartial jury."); *United States. v. Thompson*, 744 F.2d 1065, 1067 (4th Cir. 1984) (the district court erred in failing to excuse a juror for bias when a juror expressed that a photograph introduced during trial upset him, and in response to the court's questions, the juror was equivocal about his ability to proceed impartially).

quotation marks omitted). If the defendant makes this threshold showing, he is ***entitled***

under *Remmer*: (1) to a rebuttable presumption that the external influence prejudiced the jury's

ability to remain impartial; and (2) to an evidentiary hearing to determine "what actually

transpired" and whether the challenged contact was harmless. *Remmer*, 347 U.S. at 229, *Barnes*,

751 F.3d at 242-44.

Post-*Remmer*, the Supreme Court has reinforced that due process requires a hearing to

alleviate concerns of juror partiality. Specifically, in *Phillips*, the Court explained that it "has long

held that the remedy for allegations of juror partiality is a hearing in which the defendant has the

opportunity to prove actual bias." *Smith v. Phillips*, 455 U.S. 209, 215 (1982); *see also Porter v.*

*Illinois*, 479 U.S. 898, 900 (1986) (Marshall, J., dissenting from denial of writ of certiorari)

(citing *Remmer* and *Phillips* and explaining that "[w]hen a substantial question of juror bias is

presented to the trial court, ... we have held that the defendant is entitled to a hearing with all

interested parties permitted to participate" (internal quotation marks omitted)). Thus, as the Fourth

Circuit has expressed, "without a hearing, a criminal defendant is deprived of the opportunity to

uncover facts that could prove a Sixth Amendment violation." *Barnes*, 751 F.3d at 250.

Applying this law here, Mr. Hairston is entitled to a *Remmer* hearing. Indeed, he has made

a credible allegation that an unauthorized contact was made between a juror and the courtroom

deputy. In fact, here there is more than just a credible allegation of unauthorized contact. Rather,

it is an undisputed fact that an entire conversation ensued about the juror's fear. And additionally,

for all the reasons previously discussed, that conversation (in which the juror expressed fear of the

defendants in the presence of other jurors) was of such a character as to reasonably draw into

question the integrity of the trial. Not only did the juror's comments call into question the integrity

of the trial but so did the courtroom deputy's response, which implied that there was a need for

heightened security in federal court (validating the juror's safety concern, even if inadvertently). Therefore, a rebuttable presumption exists that external influence prejudiced the jury's ability to remain impartial.  Thus, Mr. Hairston is entitled to *Remmer* hearing in which juror bias can further be explored.

### Conclusion

For all of the above-stated reasons, Mr. Hairston requests that (1) this Court, consistent with *Smith*, conduct a voir dire of the jurors to determine whether the affected jurors remain fair and partial, and (2) this Court conduct an evidentiary hearing under *Remmer* to assess the jurors' continuing ability to consider the evidence impartially.  Should the Court deny either of these requests, Mr. Hairston moves for a mistrial.

Respectfully submitted,

James Wyda
Federal Public Defender
 for the District of Maryland

___/s/_____
Sasha Garcon (#817494)
Andrew R. Szekely (#16407)
Assistant Federal Public Defenders
100 South Charles Street
Tower II, 9th Floor
Baltimore, Maryland 21201
Phone: (410) 962-3962
Email: sasha_garcon@fd.org
        andrew_szekely@fd.org